[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This personal injury case, involving a claim of premises liability, was tried to the court on June 10 and 11, 1997.
In his complaint, the plaintiff, Bronislaus L. Herchel, alleges, that on or about November 13, 1993, at approximately 5:00 p.m., he was lawfully on the premises of the defendant, Connecticut Yankee Greyhound Racing, Inc., d/b/a Plainfield Greyhound Park, located in Plainfield, Connecticut. The plaintiff claims that he "was walking from a patron seating area, across the stairs and landings to the dining area, when he walked into a work area on which heavy tile adhesive had been put on the floor, causing the plaintiffs feet to stick and causing him to fall to the ground and sustain and suffer personal injuries and losses". The plaintiff alleges that his fall and injuries were caused by the defendant's failure to secure the work area and adequately warn patrons that the area was under repair and unsafe.
At the trial, six witnesses testified regarding their knowledge of the circumstances surrounding the plaintiff's claims: 1) Edgar Audet, a carpet seller/installer contracted with the defendant to replace flooring in the dining area of the subject premises; 2) David LeClair, the defendant's director of maintenance; 3) the plaintiff; 4) Helen Sullivan, a friend of the plaintiff; 5) John Giacchetto, M.D., the plaintiff's physician' and, 6) Jackalyn Trahan, a registered nurse employed by the defendant.
The plaintiff introduced eleven exhibits into evidence, including: the carpet replacement contract; accident reports; medical records and bills; and, excerpts from deposition testimony. The defendant offered into evidence three exhibits, consisting of seven photographs of the dining area where the plaintiff fell.
Based upon the testimony of the witnesses and a review of the CT Page 9603 exhibits admitted into evidence, the court finds the following facts.
The plaintiff was born on March 15, 1923; his life expectancy is 9.6 years. Mr. Herchel has lived in Plainfield, Connecticut for approximately twenty years. His residence is about one and one-half miles from the Plainfield Greyhound Park. Retired; plaintiff's activities centered around his visits to the dog track, day and night. Mr. Herchel was well known by many of the defendant's employees, being not only a neighbor, but a "regular" at the track. He wagered infrequently, mostly roamed around, visited with friends, watched television and socialized with patrons and employees. Although active prior to the accident, he had certain health concerns involving his heart, a significant hand condition and problems with water retention, apparently the result of prescribed medication.
On October 22, 1993, the defendant contracted with Interior Connections to replace carpet tiles in the dog track dining area. The contract price was approximately $31,000, involved an area of about 800 square feet and took between 3 to 4 weeks to complete. The defendant removed the old carpet squares prior to Interior Connections laying new rug squares on the cement floor. Interior Connections' partners, Edgar Audet and Roger Daigle, with part-time help, performed the job. The work consisted of spreading glue from a bucket with a trowel onto the floor, waiting from one hour to two days for the glue to become tacky and then laying the carpet squares. The glue became transparent when spread on the floor. So as not to disrupt service, only one-half of the dining area was done at a time. All tables and chairs were removed from the side of the dining area being worked on, while the other side remained open for business. It was understood between Interior Connections and the defendant, that the defendant was responsible for protecting the public from harm in the work areas. No signs were posted warning of any danger. The defendant separated the area under repair from the dining section still in use, and additional adjacent seating, by draping a rope over partitions delineating rows the length of the aisle. With the rope in place, the rows were blocked, but the aisle remained in public use. The rope was not secured to the partitions and was often knocked to the ground by normal patron traffic. The defendant assigned o individual to monitor the rope.
On the day of his accident, the plaintiff arrived at the track early. He stayed all day watching the races and visiting CT Page 9604 with people, as was his custom. Following the day's races at about 4:45 p.m., needing to use the bathroom, he walked towards the facility located ear the dining area. There were workers present in the dining location at that time, but Mr. Herchel had observed them earlier that day. The rope was lying on the ground. As he had done the day before, under similar circumstances and without incident, he decided to pass through the work area on his way to the restroom. As he stepped onto the dining room floor he noticed immediately that the floor was tacky. After taking a few steps, he found himself stuck to the floor, where upon his foot came out of his shoe, he lost his balance, fell and was injured. Shortly thereafter, security responded, as did Mr. LeClair and Nurse Trahan. Mr. Herchel was found in obvious pain, unable to stand, thus was transported to William W. Backus Hospital by ambulance. Examination revealed that he suffered a left hip fracture.
During his ten day admission to Backus Hospital, Mr. Herchel was attended to by John J. Giacchetto, M.D., an orthopaedic surgeon. Mr. Herchel has not healed well as a result of having soft bones. The five screws placed in his hip has not corrected his problems. Hip replacement surgery has been recommended, however, pre-existing cardiac difficulties prevent such procedure at this time. Before Mr. Herchel could tolerate hip replacement surgery, estimated to cost $20,000 to $25,000 and requiring a ten-month recovery period, he would first need to undergo heart bypass surgery. Mr. Herchel has opted to avoid the heart operation due to the extraordinary costs of both surgeries, the risks, the lengthy recuperation periods, his advanced years and poor health.
Having reached maximum medical improvement, Dr. Giacchetto opined that Mr. Herchel suffered a permanent impairment of fifty percent of his left lower extremity as a direct result of injuries sustained on November 13, 1993, when he fell at the Plainfield dog track. The daily pain he has suffered since the day of his injury will continue throughout his life and he will become less and less mobile as time goes by. Currently, he uses a walker to get around, but most of his life is now spent sitting or sleeping. It is expected that he will be confined to a wheelchair in the future. He continues to treat for pain control. To date, Mr. Herchel has incurred medical expenses of $25,064.39.
Usually, the status of one who sustains injury while upon the property of another is a question of fact. See Morin v. BellCT Page 9605Court Condominium Assn., Inc., 25 Conn. App. 112, 115 (1991). Where, however, the facts essential to the determination of the plaintiff's status are not in dispute, a legal question is presented. Id. The essential facts in this case are uncontradicted, Mr. Herchel was a member of the public invited to enter land owned by the defendant for a purpose for which the land was held open to the public. It is clear from the facts presented that his status is that of an invitee.
A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. Warren v. Stancliff, 157 Conn. 216, 218 (1968). The defendant's duty to use reasonable care includes the duty to warn of dangers which an invitee could not reasonably be expected to anticipate. Id. The defendant, however, has o duty to warn invitees unless it has actual or constructive notice of the specific dangerous condition which caused the plaintiff to fall. Id.
The court believes that the defendant breached its duty of care owed to Mr. Herchel for the reasons which follow. The defendant chose to do the repairs while the track was opened to the public, attracting daily crowds of hundreds, even thousands of patrons. In its agreement with the contractor, the defendant assumed responsibility for the safety of the work area, yet it assigned to individual such oversite duties. Patrons were allowed normal access to the aisles, seats and rows directly adjacent to the work area The partitions separating the rows were cushioned for patrons to lean against. Elderly customers routinely used the partitions as railings as they traveled the stairs. The work was not to be completed quickly, but over a three to four week period, thus exposing thousands to the danger. The cost of securing the area properly would have been insignificant. Instead, the defendant chose to merely drape a rope over the partitions, secured by nothing. The rope fell often, perhaps daily, and the defendant observed it on the ground repeatedly. Not one sign was posted. Notice of any danger was expected presumed so long as the rope was in place. Glue was left spread on the floor for up to two days before carpeted. When spread, the glue was transparent.
Taken together, these facts lead this court to conclude that the plaintiff has proven by a fair preponderance of the evidence that the defendant was negligent as alleged in the complaint, and that the defendant's negligence was a proximate cause of the CT Page 9606 injuries and losses he suffered.
Next, the court considers whether the plaintiff bears any responsibility for causing his fall and injuries. The comparative negligence rule provides that in causes of action based on negligence, contributory negligence shall not bar recovery if such contributory negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering. See Wright 
Ankerman, Conn. Jury Instructions § 536A(4th Ed.). If the plaintiff is more than 50% to blame for his injury, he cannot recover any damages from the defendant, his recovery is barred. Id.
The following facts warrant this court's conclusion that Mr. Herchel bears partial responsibility for his fall and injuries. The plaintiff was very familiar with the defendant's premises; indeed, it was like his "home away from home". Mr. Herchel was aware of the construction project going on in the dining area, observing its progress daily. He had observed the rope draped over the partitions and knew of its intention to keep patrons from the work site. He often saw the rope on the floor, as well, and stepped over it and entered the construction area at least twice. The first entry, the night before his accident was uneventful; the next day's journey precipitated this lawsuit. The moment he stepped onto the tacky adhesive he was aware there was a problem, yet he continued, exacerbating the situation, rather than retreating to safety. He ever called out for help.
For the reasons stated above, this court finds that Mr. Herchel's conduct contributed to his fall and injuries. To the extent that he caused his own losses, his damages shall be reduced in accordance with the comparative negligence rule. I fix the percentage of negligence attributable to the plaintiff at 35%.
Next, the court considers the question of the plaintiff's damages. The cardinal rule as to damages is that the amount awarded should be just, fair and reasonable compensation, o more and o less, for the injuries and for the pain, suffering, disability, restriction on activities, and losses which the plaintiff proves that he suffered as a direct and proximate result or consequence of his fall. See Wright Ankerman, Conn.Jury Instructions, chapter 15 (4th Ed.). CT Page 9607
To justly compensate the plaintiff for all of his economic damages, both past and future, which have resulted from the injuries he sustained in this fall, Mr. Herchel is awarded the sum of $25,064.39.
To justly compensate the plaintiff for all of his noneconomic damages, both past and future, which have resulted from the injuries he sustained in this fall, Mr. Herchel is awarded the sum of $250,000.00.
The total economic damages and noneconomic damages awarded to Mr. Herchel is $275,064.39. In accordance with the court's findings and Connecticut law, said total damage sum must be reduced by the plaintiff's comparative negligence, 35%.
Accordingly, the court finds the issues for the plaintiff, Bronislaus L. Herchel, as against the defendant, Connecticut Yankee Greyhound Racing, Inc., d/b/a Plainfield Greyhound Park, and, therefore, finds for said plaintiff to recover of said defendant the sum of $178,791.86.
Judgment may enter for the plaintiff, against the defendant.
Martin, J.